**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LATINO, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   v.<br><br>HUT 8 CORP., JAIME LEVERTON, and SHENIF VISRAM,<br><br>               Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark Latino ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Hut 8 Corp. ("Hut 8" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Hut 8; and (c) review of other publicly available information concerning Hut 8.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Hut 8 securities between November 9, 2023 and January 18, 2024, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Hut 8 is a crypto currency and data mining company.  The Company is engaged in Bitcoin mining and hosting, managed services, energy arbitrage, and operating traditional data centers.  The Company operates computing infrastructure which mines Bitcoin and delivers computing services to enterprise customers.

3.      Hut 8 formed following the November 2023 merger of Hut 8 Mining Corp. ("Legacy Hut") and U.S. Data Mining Group, Inc. d/b/a US Bitcoin Corp. ("USBTC") (the "Merger").[1]  USBTC held a 50% interest in a joint venture bitcoin mining facility, located in King Mountain, Texas (the "King Mountain JV"), which was acquired in the Merger.

---

[1] Shareholders of Legacy Hut received, for each share held, 0.2 shares of Hut 8 common stock. Stockholders of USBTC received, for each share of USBTC capital stock, 0.6716 shares of Hut 8 common stock.

4.      On January 18, 2024, at approximately 10:30 AM EST, J Capital Research published a report which alleged, *inter alia*, that Hut 8's merger with USBTC was premised on a number of alleged misstatements, including (1) that the USBTC had an "undisclosed related party" as one of its largest shareholders, (2) that one of USBTC's core assets, the King Mountain JV, "has historically failed to provide energy and high-speed internet," and (3) that the Company had misstated certain finances of the King Mountain JV by failing to account for certain interest expenses.  Citing individuals "highly familiar" with USBTC, the report stated that, without the Merger, USBTC would have undergone bankruptcy and that USBTC had a value estimated to be 70% less than the approximately $745 million that Hut 8 paid to acquire it.

5.      On this news, Hut 8's stock price fell $2.16, or 23.3%, to close at $7.12 per share on January 18, 2024, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that one of USBTC's largest shareholders is an undisclosed related party; (2) that USBTC's core asset has historically failed to provide energy and high-speed internet; (3) that the profitability of certain USBTC assets were overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.      Plaintiff Mark Latino, as set forth in the accompanying certification, incorporated by reference herein, purchased Hut 8 securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.      Defendant Hut 8 is incorporated under the laws of Delaware with its principal executive offices located in Miami, Florida.  Hut 8's common stock trade on the NASDAQ stock market under the symbol "HUT."  Prior to the Merger, Legacy Hut's common stock also traded on the NASDAQ under the symbol "HUT."

14.     Defendant Jaime Leverton ("Leverton") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15.     Defendant Shenif Visram ("Visram") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.     Defendants Leverton and Visram (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Hut 8 is a crypto currency and data mining company.  The Company is engaged in Bitcoin mining and hosting, managed services, energy arbitrage, and operating traditional data centers.  The Company operates computing infrastructure which mines Bitcoin and delivers computing services to its enterprise customers.

18.     On November 30, 2023, Legacy Hut merged with USBTC, and the combined company was named Hut 8 Corp.  Prior to the Merger, USBTC held assets including, *inter alia*, a

50% interest in a joint venture bitcoin mining facility, located in King Mountain, Texas, King Mountain JV.

**Materially False and Misleading**

**Statements Issued During the Class Period**

19.    The Class Period begins on November 9, 2023.  On that day, Hut 8 filed a Form 424B3 with the SEC, which forms part of the Merger Prospectus (the "Prospectus") which described USBTC, in relevant part, stating[2]:

> USBTC has several revenue streams: self-mining, hosting, managed infrastructure operations and equipment sales. Self-mining refers to all USBTC-owned machines that contribute computing power to mining pools in exchange for Bitcoin. Hosting refers to USBTC operating third party-owned machines at its sites in exchange for a hosting fee. Managed infrastructure operations refers to USBTC operating third-party-owned Bitcoin mining sites, leveraging its purpose-built site management software along with the curtailment platform, in exchange for a property management fee. Equipment sales refers to USBTC selling mining or infrastructure equipment to third-parties.

> USBTC owns and operates a Bitcoin mining facility in Niagara Falls, New York with access to approximately 50 MW of electricity (the "**Alpha Site**"). In December 2022, USBTC acquired from Compute North Member LLC ("**CN Member**") their entire membership interest in TZRC LLC, representing 50% of all issued and outstanding membership interests in the King Mountain JV with NextEra. The King Mountain JV owns a Bitcoin mining site in Upton County, Texas with access to approximately 280 MW of electricity (the "**Echo Site**"). The Echo Site is co-located behind-the-meter at a wind farm.

20.    The Prospectus describes the energy output available pursuant to the Merger:

> Renewable energy sources powering USBTC's owned and operated sites include renewable energy and zero carbon emission energy from wind, hydro, and nuclear sources. As of June 30, 2023:

> •    Alpha Site at Niagara Falls is fueled by a minimum of approximately 91% zero carbon emission energy sources;

---

[2] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

- Charlie Site in Nebraska is powered by more than 56% zero carbon emission sources, including 42.3% nuclear, 7.4% wind and 6.4% hydro; and

- The Echo facility at King Mountain is co-located behind the meter at a wind farm, and at peak wind generation periods can draw up to 100% of the energy the wind project produces to power mining and hosting; the rest of the time, the energy is sourced from ERCOT which includes more than 40% zero carbon emission sources.

21.    The Prospectus purported to warn of the risks of a loss of internet connectivity:

***USBTC may face risks of Internet disruptions, which could have an adverse effect on the price of Bitcoin***.

A disruption of the Internet may affect the use of Bitcoin and subsequently the value of USBTC's securities. Generally, Bitcoin and USBTC's business of mining digital assets is dependent upon the Internet. A significant disruption in Internet connectivity could disrupt a currency's network operations until the disruption is resolved and have an adverse effect on the price of Bitcoin and USBTC's ability to contribute computing power to pools that mine Bitcoin.

22.    The Prospectus reported selected historical consolidated financial data of USBTC:

| (in thousand of US dollars) | Year Ended June 30, | |
| --- | --- | --- |
| | 2023 | 2022 |
| **Consolidated Statement of Operations Data:** | | |
| Revenue: | | |
| Revenue, net – cryptocurrency mining | $    49,247 | $    68,164 |
| Mining equipment sales | 3,635 | — |
| Management fees | 7,551 | — |
| Cost reimbursements | 5,247 | — |
| Hosting services | 16,480 | 5,566 |
| Total revenue | 82,160 | 73,730 |
| Costs and expenses: | | |
| Cost of revenues (exclusive of depreciation and amortization shown below) | | |
| Services | 40,000 | 25,783 |
| Mining Equipment | 3,112 | — |
| Depreciation and amortization | 18,779 | 11,591 |
| General and administrative | 27,789 | 31,325 |
| Impairment of cryptocurrency | 3,703 | 30,301 |
| Realized (gain) on sale of cryptocurrency | (4,577) | (5,455) |
| Impairment of long-lived assets | 63,574 | — |
| Legal settlement | (1,531) | — |
| Total costs and expenses | 150,849 | 93,545 |
| Operating loss | (68,689) | (19,815) |
| Other expense: | | |
| Interest expense | (27,935) | (6,919) |
| Equity in earnings (losses) of unconsolidated joint venture | 6,132 | — |
| Gain on debt extinguishment | 23,683 | — |
| Total other income (expense) | 1,880 | (6,919) |
| Loss before income tax benefit (provision) | (66,809) | (26,734) |
| Income tax benefit (provision) | 1,198 | (5,069) |
| Net loss | $    (65,611) | $    (31,803) |
| Basic and diluted net loss per share | $    (1.52) | $    (0.91) |
| Basic and diluted weighted average number of shares outstanding | 43,133,307 | 34,863,338 |
| **Additional Financial Data** | | |
| Adjusted EBITDA[(1)] | $    35,926 | $    7,240 |

| (in thousands of US dollars) | As of June 30, 2023 |
|---|---|
| **Consolidated Balance Sheet Data:** | |
| Cash | $ 10,379 |
| Cryptocurrency, net | 851 |
| Total assets | 189,997 |
| Notes payable, less current portion | 149,891 |
| Total liabilities | 162,624 |
| Additional paid-in capital | 35,368 |
| Accumulated deficit | (106,498) |
| Total stockholders' equity | 27,373 |
| Total capitalization[(1)] | 177,264 |

23.    On December 11, 2023, the Company announced an Operations Update for November 2023 in a press release which reported the Company had, as of November 2023: 839 Megawatts total energy capacity under management, 207,399 total deployed miners under management, 75,078 Deployed miners self-mining, 166,775 deployed miners under management for managed services, and 76,737 deployed miners under management for hosting.

24.    On December 19, 2023, the Company submitted its financial results on Form 10-Q for the quarterly period ended September 30, 2023 (the "3Q23 10-Q"). The 3Q23 10-Q contained the following summary of USBTC and King Mountain JV:

**King Mountain JV**

On December 6, 2022, one of USBTC's subsidiaries acquired a 50% membership interest in the King Mountain JV and assumed the King Mountain JV's senior Note (the "King Mountain JV Senior Note"). USBTC acquired the 50% membership interest through a competitive auction process in connection with the Chapter 11 bankruptcy filing of Compute North. ***The King Mountain JV has self-mining and hosting operations at the King Mountain location. USBTC has concluded that the King Mountain JV will be accounted for with the equity method of accounting***. USBTC's 50% portion of monthly distributions from the King Mountain JV will be swept to pay down the King Mountain JV Senior Note. For additional information on the King Mountain JV Senior Note, see below.

Self-mining revenue, hosting services revenue and cost reimbursement revenues for the King Mountain JV was $6.7 million, $13.3 million and $12.3 million, respectively, for the three months ended September 30, 2023, which represented 100% of the King Mountain JV's revenue during the period.

25.     The 3Q23 10-Q stated the following concerning related party transactions:

Related parties are defined as entities related to the Company's directors or main shareholders as well as equity method investment entities. ***The Company provides services to TZRC, an equity method investment entity*** (refer to Note 9 for additional information on the equity method investment entity), in exchange for fees under a PMA.

26.     The 3Q23 10-Q reported income derived from King Mountain JV:

Table of Contents

**U.S. Data Mining Group, Inc. and Subsidiaries**
**Notes to Unaudited Condensed Consolidated Financial Statements**

A summarized consolidated income statement and balance sheet for TZRC as of September 30, 2023 follows:

Condensed Consolidated Income Statement

|  | | Three Months Ended September 30, 2023 |
|---|---|---|
| Revenues, net | $ | 32,279 |
| Gross profit | $ | 17,305 |
| Net income | $ | 665 |
| Net income attributable to investee | $ | 303 |

Condensed Consolidated Balance Sheet

|  | | As of September 30, 2023 |
|---|---|---|
| Cash | $ | 29,300 |
| Current assets | $ | 41,022 |
| Noncurrent assets | $ | 202,764 |
| Current liabilities | $ | 26,371 |
| Noncurrent liabilities | $ | 15,651 |
| Members' equity | $ | 201,764 |

**Note 10. Notes Payable**

The following is a summary of the Company's secured promissory notes as of September 30, 2023 and June 30, 2023:

**Notes Payable – September 30, 2023:**

| Issuance Date | Maturity Date | Interest Rate | Principal * | | Current Portion |
|---|---|---|---|---|---|
| *Anchorage Loan* | | | | | |
| February 3, 2023 | February 2, 2028 | 14.00 % $ | 46,555 | $ | 985 |
| *TZRC Secured Promissory Note* | | | | | |
| December 6, 2022 | April 8, 2027 | 15.25 % | 84,292 | | — |
| *Third Party Note* | | | | | |
| December 6, 2022 | December 5, 2027 | 18.0 % | 10,985 | | — |
| | | Totals | $ 141,832 | $ | 985 |

\*    = Net of debt issuance costs which totaled approximately $3.7 million.

**Notes Payable – June 30, 2023:**

| Issuance Date | Maturity Date | Interest Rate | Principal * | | Current Portion |
|---|---|---|---|---|---|
| *Anchorage Loan* | | | | | |
| February 3, 2023 | February 2, 2028 | 14.00 % $ | 48,587 | $ | 1,299 |
| *TZRC Secured Promissory Note* | | | | | |
| December 6, 2022 | April 8, 2027 | 15.25 % | 92,102 | | — |

27.    On January 5, 2024, the Company announced an Operations Update for December 2023 in a press release which stated in relevant part, that the Company held, as of December 2023: 839 Megawatts total energy capacity under management, 205,759 total deployed miners under management, 73,943 Deployed miners self-mining, 166,347 deployed miners under management for managed services, and 76,734 deployed miners under management for hosting.

28.    The above statements identified in ¶¶ 19-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that one of USBTC's largest shareholders is an undisclosed related party; (2) that USBTC's core asset has historically failed to provide energy and high-speed internet; (3) that the profitability of certain USBTC assets were overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

<u>**Disclosures at the End of the Class Period**</u>

29.    On January 18, 2024, at approximately 10:30 AM EST, J Capital Research published a report entitled "The Coming HUT Pump and Dump" with a subheading which read "management hiding stock ownership through undisclosed related party, a stock promotor cabal, and a host of left-for-dead assets" (the "Report").  The Report alleged that USBTC's CEO, Michael Ho ("Ho"), may be hiding ownership shares through his partner, Anna Kudrjasova, *via* her company Anaya Capital Corp.:

Documents for different companies list the same address for Ho and Kudrjasova, in Dubai at 5709 Cayan Tower, Dubai Marina, Dubai, UAE 643671.

"(31) Anna Kudrjasova has sole voting and dispositive power over the securities held for the account of this selling stockholder, as director. The selling stockholder's address is 5709 Cayan Tower, Dubai Marina, Dubai, UAE 643671."

U.S. Gold Corp Prospectus

"21 The address that Michael Ho gave as President, Secretary, and Treasurer of both Kairos and Ingenium Global Inc. – 5709 Cayan Tower in Dubai – is different from the address he gave to the State of Florida in registering Prive."

Takata v RIOT page 65[9]

30.    The Report describes how "[t]his is particularly significant, because Ho has committed to a lock-up of 65% of his shares - but not hers. Anaya Capital appears to hold about 3.7 mln shares."  The Report details that Ho and Kudrjasova have been associated for nearly a decade:

The two have been associated for about a decade. Back in 2014, the Vancouver Sun identified Ho and Kudrjasova as a couple.

*HO A GO-GO: Folks filled a 3,000-square-foot, Boundary-at-Kitchen showroom recently at a debut party for Shanghai-born Michael Ho's Vancouver Motorcars firm. Pushed outside were Ferraris, sporty Audis and Ho's Mercedes-Benz SLR 6.3 on which he must pay a hefty insurance premium. That's because, like Latvia-born personal and business partner Anna Kudrjasova, he is 20 years old but already a seasoned entrepreneur. The two sold their Ritzypin online womenswear firm recently when, despite satisfactory sales margins, local manufacturing was barely profitable.*

[11]

31.    The Report also alleged that King Mountain JV "has historically failed to provide energy and high-speed internet," and described an extensive history of a lack of connectivity, despite the fact Bitcoin mining requires constant connectivity:

***The King Mountain JV has been plagued with connectivity problems***. In its 2023 Annual Report, published on March 16, 2023, MARA reported "the company experienced significant production downtime in the second and third quarters…and delays in energization at King Mountain." MARA had 60,000 miners at the facility, but according to a Proof of Claim MARA filed in the Compute North bankruptcy case, the miners were never energized. MARA's Statement of Claim said that King Mountain lacked a high-speed internet connection.

\*     \*     \*

On November 23, 2022, ***MARA, which was the largest customer for the King Mountain site, filed a motion stating that Compute North at King Mountain had failed to energize its miners and failed to provide an adequate internet connection***.

\*     \*     \*

MARA also said that there was a ***lack of high-speed connection at the facility***.

\*     \*     \*

***USBTC itself was so disgruntled that it filed suit. Just one month before buying the King Mountain JV, USBTC filed an action against CN King Mountain LLC for failing to find a location where miners could be installed and energized***.

\*     \*     \*

Our diligence suggests that the facility now uses a Starlink satellite network instead of a broad-band connection to access the internet. This is unheard of in the Bitcoin mining industry. Starlink is an expensive and unreliable choice for mining at scale. Said one interviewee who managed a large data center when asked if he would ever use Starlink as primary internet source for Bitcoin mining at scale, he said "never."

32.    The Report also alleged that the Company overstates profitability by failing to account for certain "interest expenses" concerning King Mountain JV:

The company is misleading on the profitability of the JV, with accounts showing $665,000 of profit while completely ignoring about the $3.2 mln interest expense incurred during the same period.

**U.S. Data Mining Group, Inc. and Subsidiaries**

**Notes to Unaudited Condensed Consolidated Financial Statements**

A summarized consolidated income statement and balance sheet for TZRC as of September 30, 2023 follows:

Condensed Consolidated Income Statement

**An apparently, albeit barely, profitable JV seems like good news**

|  | Three Months Ended September 30, 2023 |
|---|---|
| Revenues, net | $ 32,279 |
| Gross profit | $ 17,305 |
| Net income | $ 665 |
| Net income attributable to investee | $ 303 |

**Note 10. Notes Payable**

The following is a summary of the Company's secured promissory notes as of September 30, 2023 and June 30, 2023:

**Notes Payable – September 30, 2023:**

**Yet these JV numbers exclude the very expensive interest cost from a promissory note assumed with the acquisition of the JV - this cost is shown elsewhere in the company filings**

| Issuance Date | Maturity Date | Interest Rate | Principal * | Current Portion |
|---|---|---|---|---|
| **Anchorage Loan** | | | | |
| February 3, 2023 | February 2, 2028 | 14.00 % | $ 46,555 | $ 985 |
| | | | | |
| **TZRC Secured Promissory Note** | | | | |
| December 6, 2022 | April 8, 2027 | 15.25 % | 84,292 | — |
| | | | | |
| **Third Party Note** | | | | |
| December 6, 2022 | December 5, 2027 | 18.0 % | 10,985 | — |
| | Totals | | $ 141,832 | $ 985 |

\*  = Net of debt issuance costs which totaled approximately $3.7 million.

33.    The Report also casted doubt on to other reported financials stating:

We are confused about how many miners USBTC has. The November 2023 Hut 8 operations update claims that USBTC had 46,225 Bitcoin miners deployed for October 2023, and yet at the end of September 2023, USBTC reported operating only 30,200 miners.

We find this ramp-up extremely unlikely, especially without disclosing new machine orders or deposits for new miners in USBTC's end September 2023 balance sheet. Remaining construction in progress was far less than the typical purchase value for that many extra machines. Is USBTC telling the truth?

34.    The Report further claimed that, without the merger with Hut 8, individual "highly familiar" with USBTC stated the USBTC would have been forced to undergo a structured bankruptcy:

One person highly familiar with USBTC told us, "without the merger, [USBTC] would have done a structured bankruptcy."

*       *       *

"The merger was a complete godsend for USBTC," someone deeply involved with the company told us. Without the merger, this person said, USBTC would have been bankrupt within weeks. "It was very much in the cards." ***In early 2023, USBTC gave up almost half its miners, plus $20.7 mln and some other assets, in an apparent default***.

*       *       *

Our interviewee said that USBTC "begged" NYDIG to forgive the loan but soon after Christ- mas was forced to surrender assets. ***Hut 8 managed to characterize this default as a $23.7 mln GAIN on debt extinguishment. But it had started out as a $24.2 mln LOSS that the company "fixed" through an accounting sleight of hand***. Abracadabra!

35.    Finally, the Report concluded, based on a review of financial reports, "we estimate a value for USBTC that's as much as 70% less. Typically, such egregious over-payments occur only when management is being enriched."  Further:

•We are highly skeptical that the King Mountain JV is worth the $105 mln paid by USBTC, given reports that the center at the time lacked both reliable power and internet.

Nevertheless, we assign what we believe to be an aggressive $105 mln valuation – the price USBTC paid for the facility. This is despite MARA's recent purchase of Granbury and Kearney, which indicates that the King Mountain JV would be worth only $64 mln.

•Our valuation of USBTC's Managed Infrastructure Operations (MIO) business is $51 mln, a generous 3x forward revenue.

\*      \*      \*

*In total, we value the USBTC operating assets at the high end at $219 mln. Not only do we suspect that USBTC overpaid for the King Mountain JV, but Hut 8 overpaid again, by a factor of four, for the same facility, along with the Niagara mining facility and the two managed-facility contracts.* New Hut issued 49.7 mln shares in exchange for all US- BTC stock – a value of about $495 mln at the time. Hut 8 also took on $160 mln in net debt plus around $90 mln in planned spending commitments ($40 mln for AI equipment and $50 mln in planned capital expenditure) in exchange for the USBTC and Legacy Hut assets.

36.    On this news, Hut 8's stock price fell $2.16, or 23.3%, to close at $7.12 per share on January 18, 2024, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Hut 8 securities between November 9, 2023 and January 18, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hut 8's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Hut 8 shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Hut 8 or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Hut 8; and

c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

43.    The market for Hut 8's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Hut 8's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Hut 8's securities relying upon the integrity of the market price of the Company's securities and market information relating to Hut 8, and have been damaged thereby.

44.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hut 8's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Hut 8's business, operations, and prospects as alleged herein.

45.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hut 8's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

46.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47.     During the Class Period, Plaintiff and the Class purchased Hut 8's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

48.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Hut 8, their control over, and/or receipt and/or modification of Hut 8's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Hut 8, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

49.     The market for Hut 8's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Hut 8's securities traded at artificially inflated prices during the Class Period.  Plaintiff

and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Hut 8's securities and market information relating to Hut 8, and have been damaged thereby.

50.    During the Class Period, the artificial inflation of Hut 8's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hut 8's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Hut 8 and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51.    At all relevant times, the market for Hut 8's securities was an efficient market for the following reasons, among others:

    a)    Hut 8 shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

    b)    As a regulated issuer, Hut 8 filed periodic public reports with the SEC and/or the NASDAQ;

    c)    Hut 8 regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and

through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)    Hut 8 was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52.    As a result of the foregoing, the market for Hut 8's securities promptly digested current information regarding Hut 8 from all publicly available sources and reflected such information in Hut 8's share price. Under these circumstances, all purchasers of Hut 8's securities during the Class Period suffered similar injury through their purchase of Hut 8's securities at artificially inflated prices and a presumption of reliance applies.

53.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

54.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Hut 8 who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Hut 8's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

57.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hut 8's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hut 8's financial well-being and prospects, as specified herein.

59.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Hut 8's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hut 8 and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

60.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management

team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

61.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Hut 8's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Hut 8's securities was artificially inflated during the Class Period.  In ignorance of the fact that market

prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Hut 8's securities during the Class Period at artificially high prices and were damaged thereby.

63.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Hut 8 was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Hut 8 securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

66.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.    Individual Defendants acted as controlling persons of Hut 8 within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.    As set forth above, Hut 8 and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2024                     **POMERANTZ LLP**

                                         */s/ J. Alexander Hood II*
                                         J. Alexander Hood II
                                         Jeremy A. Lieberman
                                         Thomas H. Przybylowski
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (917) 463-1044
                                         ahood@pomlaw.com
                                         jalieberman@pomlaw.com
                                         tprzybylowski@pomlaw.com

                                         *Attorneys for Plaintiff*